**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE CARROLL,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:25-CV-2904-G-BK** |
| | § | |
| **VIVID SEATS, LLC,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States magistrate judge for pretrial management. Before the Court is *Defendant's Motion to Dismiss with Prejudice*, Doc. 14. However, upon review, Plaintiff Charlotte Carroll's claims should be **DISMISSED** *sua sponte* for lack of subject matter jurisdiction. Alternatively, *Defendant's Motion to Dismiss with Prejudice*, Doc. 14, should be **GRANTED**.

## I. BACKGROUND

Plaintiff Charlotte Carroll, proceeding *pro se*, brings this civil action against Defendant Vivid Seats, LLC ("Vivid Seats"). Asserting diversity jurisdiction under 28 U.S.C. § 1332(a), Carroll alleges breach of a settlement agreement, fraudulent misrepresentation, fraudulent concealment, breach of the implied covenant of good faith and fair dealing, enforcement of negotiable instruments, conversion, and intentional infliction of emotional distress. Doc. 3 at 3-7.

Carroll previously sued Vivid Seats in Texas state court and that case was subsequently removed to this Court in a different cause of action. *See Carroll v. Vivid Seats, LLC*, No. 3:25-

cv-127-X-BN (N.D. Tex.).[1] The parties later executed a confidential settlement agreement (the "Settlement Agreement" or "Agreement") in that case, disposing of the claims. Doc. 16 (Def.'s Ex. 1). The Settlement Agreement, executed by Carroll and a representative of Vivid Seats, stipulates that the "Consideration" is to be paid by "*check* made payable to "Charlotte Carroll. . . ." Doc. 16 at 6, 13. The Agreement further provides:

> The consideration referenced in this Section will be paid within ten (10) calendar days of the later of: (I) the Company's receipt, through its counsel of record, of the Agreement signed by Carroll; (2) the Company's receipt, through its counsel of record, of the executed Form W-4s for Carroll; (3) the Company's receipt, through its counsel of record, of the executed Form W-9s for Carroll; and (4) the Effective Date of the Agreement.

Doc. 16 at 6. After the Agreement was executed, the parties jointly moved to dismiss the case, Dkt. 44, the motion was granted, and the case was dismissed with prejudice, Dkt. 45.

In her Complaint, Carroll alleges that, thereafter:

> Defendant issued two checks drawn on Chase Bank rather than wiring funds, despite knowing Plaintiff's prior concerns with delays clearing third-party checks. . . . Plaintiff deposited the checks into **Capital One Bank,** as demanded by Defendant. . . . Capital One placed a standard verification hold and requested **Defendant's confirmation** through its counsel and Chase Bank to release the funds. . . . Plaintiff **immediately notified** Defendant's counsel via **both phone and email** that Capital One required verification. . . . **Defendant refused to confirm or verify funds** with Capital One or its own issuing bank. . . . As a result, Plaintiff **has not received the settlement funds** and remains unable to use the money owed.[2]

---

[1] When deciding a motion to dismiss, a court may also consider matters of public record. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 (5th Cir. 2007).

[2] In her response to the instant motion to dismiss, Carroll notes that the settlement funds were ultimately released to her bank account. *See* Doc. 38 at 7 (stating she "does not seek damages merely because payment was ultimately delayed and later completed.").

Doc. 3 at 2 (emphasis in original). Carroll contends that Vivid Seats' "obstruction was deliberate, **deceptive,** and designed to **create a false appearance of compliance** while avoiding payment." Doc. 3 at 3 (emphasis in original). Carroll seeks "treble," "punitive and exemplary," and "compensatory" damages totaling $300,000 for:

> a.) **Missed housing opportunities,** because [Carroll] could not timely pay deposits and expenses[;]
> b.) **Inability to travel** out-of-state for a family emergency following a death in the family[;]
> c.) **Severe emotional distress**[; and]
> d.) Time spent attempting to compel release of funds[.]

Doc. 3 at 2-3.

## II. Analysis

### A. The Court Lacks Authority to Adjudicate Carroll's Claims

Carroll asserts jurisdiction in this action under 28 U.S.C. § 1332, based on the parties' diversity of citizenship and requisite amount in controversy. *See* Doc. 3 at 1. She alleges that Vivid Seats breached the Settlement Agreement because she did not receive the settlement funds within ten days as required. Doc. 3 at 2. Carroll now seeks $300,000 in damages.

As Carroll's damages demand appeared to lack a good faith basis, the Court ordered her to show cause why this case should not be dismissed for lack of subject matter jurisdiction. Doc. 35. In response to the Court's Show Cause Order, Carroll basically reiterates the damages allegations in her Complaint, contending that the amount in controversy is satisfied because of her "missed housing opportunities, inability to travel out of state following a death in the family, severe emotional distress, loss of use of funds, financial harm, and other consequences resulting from Defendant's alleged conduct." Doc. 38 at 3 (citing Doc. 3 at 2-8 [Pl.'s Compl.]). She expounds that while she was waiting on the settlement funds to clear her bank, she could not

travel to her stepmother's funeral and that she and her family had to "remain[] with relatives and slept on the floor rather than moving into their own residence." Doc. 38 at 3 (citing Doc. 21 at 5 [Pl.'s Resp. to Mot. to Dismiss]). Carroll also clarifies that she "does not rely upon either the settlement principal or exemplary damages to establish the jurisdictional minimum." Doc. 38 at 3.

Federal courts are courts of limited jurisdiction, having "only the authority endowed by the Constitution and that conferred by Congress." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.,* 503 U.S. 131, 136-37 (1992); *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)). Thus, the Court should always examine, *sua sponte*, if necessary, the threshold question of whether it has subject matter jurisdiction. *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001). Unless otherwise provided by statute, federal court jurisdiction requires (1) a federal question arising under the Constitution, a federal law, or a treaty, see 28 U.S.C. § 1331, or (2) complete diversity of citizenship between adverse parties exceeding $75,000 in controversy, *see* 28 U.S.C. § 1332.

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014); *see also* *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). However, "[w]hile a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury." *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 319-20 (5th Cir. 2012). If challenged, a plaintiff alleging a specific

amount in controversy still has "the burden . . . of supporting the allegation." *See Diefenthal v. C.A.B.*, 681 F.2d 1039, 1052 (5th Cir. 1982) (cleaned up).

Here, Carroll's requested damages totaling $300,000 is well above the jurisdictional threshold of $75,000. Doc. 3 at 3-4. Nevertheless, Carroll's damages claims must have a causal connection to Vivid Seats' failure to contact Carroll's bank to verify the check, as well as some plausible factual basis. *See Thomson v. Gaskill*, 315 U.S. 442, 447 (1942); *see also Harris v. Illinois Cent. R. Co.*, 220 F.2d 734, 736 (5th Cir. 1955) (damages for federal jurisdictional purposes must be estimated in good faith). But Carroll alleges no facts from which a good faith basis can be inferred for such an extraordinary damages request. Indeed, Carroll's claim for damages on the bases she alleges appears glaringly implausible. Doc. 3 at 3-4; *Gaskill*, 315 U.S. at 447 ("[T]he value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation."). Indeed, there are no facts alleged in the Complaint from which it can be reasonably inferred that there is a causal connection between the delay by Carroll's bank to release the funds after deposit of the settlement checks issued by Vivid Seats and her subsequent financial difficulties.

For the same reasons, Carroll's allegations fail to even minimally establish her standing to sue. Absent Article III standing, the Court lacks subject matter jurisdiction to adjudicate the merits of this action.

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial

relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At the pleading stage, the party invoking jurisdiction must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citation omitted). "Failure to establish any one [element] deprives the federal courts of jurisdiction to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (citation omitted).

> [O]ur cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not "conjectural" or "hypothetical,". . . . *Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.* Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." our cases have established that the irreducible constitutional minimum of standing contains three elements. . . . .

*Lujan*, 504 U.S. at 561 (cleaned up) (emphasis added). As detailed, Carroll, in essence, attempts to hold Vivid Seats responsible for expenses wholly unrelated to its legal obligations under the Settlement Agreement and that she herself did not even anticipate. By her own pleadings, the injuries Carroll claims are neither "concrete" nor "particularized," and more importantly, they are not "fairly traceable" to any action of Vivid Seats.

Based on the dearth of plausible facts supporting Carroll's damages claim, the Court cannot conclude that it is made in good faith, as is required by law to invoke the subject matter jurisdiction of this Court. Moreover, Carroll's allegations wholly fail to establish her standing under Article III of the Constitution, depriving the Court of the authority to adjudicate them. Consequently, this case should be dismissed without prejudice on these bases.

### B. Alternatively, Dismissal Is Warranted Under Rule 12(b)(6)[3]

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court, however, is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678-79. In reviewing a Rule 12(b)(6) motion, the Court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

#### 1. Carroll Fails to State a Claim for Breach of Settlement Agreement

Carroll contends that Vivid Seats breached the parties previously executed settlement agreement. Doc. 3 at 3-4.

A settlement agreement is "enforceable in the same manner as any other written contract." *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 323 (5th Cir. 2006) (quoting

---

[3] While the Court is aware that its lack of jurisdiction divests it of the ability to rule on the merits of this action, the Court only does so to clarify for the record that an alternate basis exists to dismiss and affirm the dismissal of Plaintiff's claims.

*Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.— Houston [14th Dist.] 1995, writ denied)). And a contract is breached "when a party fails to perform a duty required by the contract." *Molzan v. Bellagreen Holdings, LLC*, 112 F.4th 323, 335 (5th Cir. 2024) (quoting *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied)). The essential elements of a breach of contract claim in Texas are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex. App.—Houston [14th] 2005, pet. denied)).

In the instant case, the parties do not dispute that the Settlement Agreement constitutes a valid contract and that Carroll tendered performance by dismissing her original claims against Vivid Seats. Doc. 3 at 2. Vivid Seats, however, contends that Carroll has not plausibly alleged the third and fourth elements of breach of contract—breach and damages. Doc. 15 at 10-14. The Court agrees.

Carroll has failed to plausibly allege that Vivid Seats breached its duty under the agreement. Indeed, Carroll concedes that Vivid Seats tendered both settlement checks by mail and that both arrived within the 10-day period. *See* Doc. 3 at 3 ("[Vivid Seats] knowingly refused to verify the checks . . . even as the 10-day contractual deadline approached."). That is the substance of Vivid Seats' duty under the Settlement Agreement. To the extent Carroll alleges some extrajudicial expansion of the terms of the Vivid Seats' obligations under the Settlement Agreement to include contacting Carroll's bank to verify the validity of the checks, the written Settlement Agreement imposes no such duty. *C.f.* TEX. R. CIV. P. 11 (providing in

relevant part that "no agreement between attorneys or parties touching any suit pending will be enforced *unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record*.") (emphasis added).

Moreover, Carroll's breach of contract claim fails because, as discussed *supra*, she has not adequately pleaded damages that resulted from the alleged breach. "Under Texas law, contract damages are defined by the plaintiff's *actual* loss." *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 278 (5th Cir. 2009) (emphasis added). "[A] party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural." *Id.* (quoting *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex. App.—Dallas 1996, no writ)).

Dismissal of breach of contract claims is appropriate for failure to plead actual damages with specificity. *See, e.g.*, *Snowden v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1797, 2019 WL 587304, at *6 (N.D. Tex. Jan. 18, 2019) (Horan, J.) (recommending dismissal of breach of contract claim for failure to adequately plead actual damages), *adopted by* 2019 WL 586005 (N.D. Tex. Feb. 12, 2019); *Seismic Wells, LLC v. Matthews*, No. 5:15-cv-148, 2016 WL 3390507, at *3 (N.D. Tex. Feb. 22, 2016) (Cummings, J.) (dismissing breach of contract claim for failure to sufficiently plead "actual loss"). Consequently, Vivid Seats is entitled to dismissal of the claims against it on this basis.

**2. Carroll Fails to State a Claim for Fraudulent Misrepresentation.**

Vivid Seats also argues that Carroll has failed to state a claim for fraudulent misrepresentation. Doc. 15 at 14. The elements of fraudulent misrepresentation in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the

representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff's injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "A false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Id.* at 1033 (citing *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 478-79 (Tex. App.—Fort Worth 2004, no pet.)).

Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to claims for fraudulent misrepresentation. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024). Rule 9(b)'s "particularity" standard requires a party to, at a minimum, set forth "allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Crosswell v. Rodriquez*, 120 F.4th 177, 184 (5th Cir. 2024); *see Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (observing that Rule 9(b) requires the asserting party to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.") (quotation marks and citation omitted). However, Rule 9(b) permits a party to plead generally "[a]llegations about

conditions of the mind, such as a defendant's knowledge of the truth and intent to deceive." *Crosswell*, 120 F.4th at 184.

Although Vivid Seats argues that Carroll failed to state a claim for fraudulent misrepresentation under FED R. CIV. P. 8(a)'s pleading standard, the Court analyzes Carroll's claim under Rule 9(b)'s standard. As set forth above, Rule 9(b) requires the asserting party to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan*, 600 F.3d at 551. Carroll's Complaint, even construed liberally, fails to meet this standard.

Carroll alleges that Vivid Seats, "through its counsel represented that payment was 'complete' and that [Carroll] merely needed to wait for bank processing." Doc. 3 at 6. Carroll further alleges that at the time of its statements, Vivid Seats "knew full well that verification had not been provided and that [her bank] could not clear the checks without [Vivid Seats'] cooperation" and that the statements were made to "induce" Carroll into believing the payment was finalized to avoid further court involvement. Doc. 3 at 6. Carroll contends that she "reasonably relied on those misrepresentations" as she waited for the funds to unfreeze and that Vivid Seats' conduct was "fraudulent, deceptive, and undertaken with intent to deprive [Carroll] of her settlement proceeds." Doc. 3 at 6.

Here, Carroll's assertions that Vivid Seats' "omissions and false assurances," were "fraudulent, deceptive, and undertaken with intent to deprive [Carroll] of her settlement proceeds," Doc. 3 at 6, are precisely the type of conclusory allegations that Rule 9(b) prohibits. Although a defendant's "malice, intent, or knowledge 'may be averred generally,'" Carroll must still "set forth specific facts that support an inference of fraud." *Colonial Oaks Assisted Living*

*Lafayette, LLC v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). Carroll fails to do so here. As a result, the Court would have to speculate in order to fill in the blanks, but "Rule 9(b) does not allow the plaintiffs to force the defendants—or the court—to make such assumptions." *Id.* at 694-95. Thus, even accepting Carroll's allegations as true, her fraudulent misrepresentation claim fails to meet Rule 9(b)'s heightened pleading standard and should be dismissed for failure to state a claim.

**3. Carroll has Abandoned her Remaining Claims.**

Vivid Seats argues that Carroll's remaining claims for (1) breach of implied covenant of good faith and fair dealing, (2) fraudulent concealment, (3) enforcement of negotiable instruments, conversion, and (4) intentional infliction of emotional distress, are not independent causes of action under Texas law and that even if they were, Carroll failed to plausibly allege the claims. Doc. 15 at 15-16. However, because Carroll failed to defend those claims in her Response, she is deemed to have abandoned those claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff's failure to defend claim against motion to dismiss constitutes abandonment) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001)). Indeed, just like the plaintiff in *Black*, Carroll has failed to pursue her remaining claims beyond the filing of her complaint. *See id.* Therefore, dismissal of Carroll's remaining state law claims is warranted.

**4. Leave to Amend Is Not Warranted**

When a court dismisses a *pro se* plaintiff's claims under Rule 12(b)(6), it generally should give the plaintiff at least one opportunity to amend the complaint. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Here, Carroll has not previously

amended her complaint, and in response to the motion to dismiss, she requests leave to amend her complaint only to "clarify the factual basis" for her breach of contract claim and "add additional allegations supporting" her fraudulent misrepresentation claim. Doc. 21 at 2. Ordinarily, such request should be granted. However, here, based on the factual premises ungirding all of her claims, it is unlikely that Carroll can allege facts that would permit the Court to exercise subject matter jurisdiction over them. Indeed, as detailed *supra*, the Court has already given Carroll the opportunity to proffer facts and legal bases for the exercise of jurisdiction by its previous Show Cause Order. Thus, the Court can only conclude that Carroll has already pleaded her best case with respect to that issue and that granting leave to amend those claims would be futile and cause needless delay.[4]

## III. Violations of Rule 11 and the Court's Local Rules

Carroll's Complaint repeatedly misquotes and mischaracterizes existing authorities. For example, Carroll cites to the real case of *United States v. Hunt*, 272 F.3d 488, 495 (7th Cir. 2001), and insists that the Seventh Circuit stated that "delivery of a check is not payment until the check is accepted or paid by the drawee bank." Doc. 3 at 4. This quotation, however, does not appear anywhere in the opinion. Moreover, the opinion did not address breach of a settlement agreement; instead, it concerned a sentencing appeal in a drug trafficking case. *Hunt*, 272 F.3d at 491.

---

[4] This finding notwithstanding, the 14-day objection period attendant to this Recommendation will permit Carroll to proffer facts, if any, that if alleged, cure the jurisdictional issues noted herein.

Carroll also purports to directly quote *United States v. Meadors*, 753 F.2d 590, 592 (7th Cir. 1985) as stating that "[t]ender of a check constitutes only conditional payment until honored." Doc. 3 at 4. Again, this statement does not appear anywhere in the opinion, and the case involves a completely different issue—whether the Small Business Administration could collect on the outstanding balance of a debt from a specific guarantor. See *Meadors*, 753 F.2d at 591.

Because of these and other inaccurate and/or non-existent legal sources, the Court also ordered Carroll to show cause as to why she should not be sanctioned. Specifically, the misrepresented legal authority appeared indicative of reliance on large language models or other kinds of generative artificial intelligence (AI).[5]

"It is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs." *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) (cited source omitted); *see also Boggess v. Chamness*, No. 6:25-cv-64-JDK-JDL, 2025 WL 978992, at *1 (E.D. Tex. Apr. 1, 2025) (Kernodle, J.) ("Plaintiff's citation to a hallucinatory case was likely generated via artificial intelligence and violates this Court's Local Rule . . . which makes clear that 'generative artificial intelligence tools may produce factual and legal inaccuracies and reminds attorneys that they must verify the information that

[5] "Generative AI is a specific subset of artificial intelligence that 'essentially mimics the human brain, to think rather than simply follow rules as most machines do.'" *In re Nwaubani*, No. 25-9517, 2026 WL 687194, at *1, n.1 (4th Cir. Mar. 11, 2026) (citation omitted).

they submit to the court.'") (quoting *Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-cv-281, 2024 WL 4882651, at *2 (E.D. Tex. Nov. 25, 2024) (Crone, J.)).

Here, the Court's local civil rules require litigants to disclose the use of Generative AI:

> 1. A brief prepared using generative artificial intelligence must disclose this fact on the first page under the heading "Use of Generative Artificial Intelligence." If the presiding judge so directs, the party filing the brief must disclose the specific parts prepared using generative artificial intelligence.
>
> 2. "Generative Artificial Intelligence" means a computer tool (whether referred to as "Generative Artificial Intelligence" or by another name) that is capable of generating new content (such as images and text) in response to a submitted prompt (such as a query) by learning from a large reference database of examples.
>
> 3. A party who files a brief that does not contain the disclosure required by subsection (f)(1) of this rule certifies that no part of the brief was prepared using generative artificial intelligence.

N.D. TEX. LOC. CIV. R. 7.2(f)(1)-(3). While this rule does not forbid the use of tools like Generative AI, it requires that parties disclose such use, which Plaintiff failed to do.

Further, such conduct violates Federal Rule of Civil Procedure 11. *See* FED. R. CIV. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law. . ."). Under Rule 11, all parties, including *pro se* litigants, must "confirm the existence and validity of, the legal authorities on which they rely." *Park v. Kim,* 91 F.4th 610, 615 (2d Cir. 2024). This is because "the central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990).

Carroll's filings—obviously built on non-existent AI-generated cases—are "the epitome of baseless." *Willis v. U.S. Bank Nat'l Ass'n as Tr., Igloo Series Tr.*, No. 3:25-CV-516-BN, 2025

WL 1224273, at *3 (N.D. Tex. Apr. 28, 2025) (Horan, J.) (citing *Sanders*, 176 Fed. Cl. at 168). And while courts afford *pro se* litigants' considerable leeway, that does not relieve them of their obligation under Rule 11 to confirm the validity of all cited legal authority. *Sanders*, 176 Fed. Cl. at 169; *cf. id.* ("Beyond the waste of resources and the violation of her Rule 11 obligations, [p]laintiff's unquestioning reliance on AI hindered her own ability to effectively represent herself. Misled by the fake cases, [p]laintiff cost herself an opportunity to make the best possible arguments in support of her claim for relief.").

In her response to the Order to Show Cause, Carroll denies that reliance on AI was the cause of her repeated citation of misrepresented legal cases and insists they were merely "inadvertent errors." Doc. 38 at 7. Carroll also states that she has been receiving "assistance from several actual people in researching and preparing filings," "and the individuals assisting her utilize a variety of available research and drafting resources, *including AI*, DuckDuckGo, Case Mine, Texas Opinions, LexisNexis, Westlaw, Google, law-library materials, statutes, reported decisions, court records, and other resources available to all attorneys and litigants." Doc. 38 at 8. Despite her protestations, however, Carroll conveniently discloses that she used AI to prepare her response to the Show Cause Order. Doc. 38 at 1.

But regardless of the reason for her multiple use of misleading and erroneous citations, Carroll's repeated inclusion of the same in her pleadings strains already limited judicial resources and possibly Defendant's resources as well. At bottom, Carroll failed in her responsibility to confirm the existence and validity of the legal authorities on which she relied. And that conduct violates Rule 11.

Accordingly, Plaintiff should be admonished that going forward, failing to comply with

the notice requirements set out in Local Civil Rule 7.2(f)(1)-(3) or filing pleadings with citations to nonexistent cases may result in the imposition of sanctions, including the striking of filings, the imposition of filing restrictions, monetary penalties, or dismissal of this action.

## IV. CONCLUSION

For the foregoing reasons, this action should be **DISMISSED WITHOUT PREJUDICE** *sua sponte* for lack of subject matter jurisdiction. Alternatively, *Defendant's Motion to Dismiss with Prejudice*, Doc. 14, should be **GRANTED**. Further, Carroll should be admonished that any further failure to comply with the notice requirements set out in Local Civil Rule 7.2(f)(1)-(3) or filing of pleadings with citations to nonexistent cases, in violation of FED. R. CIV. P. 11, may result in sanctions, including the striking of filings, the imposition of filing restrictions and monetary penalties.

**SO RECOMMENDED** on September 10, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).